26 CV 2517

RECEIVED
SDNY PRO SE OFFICE

2026 MAR 26  PM 3: 53

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAQUAN WILLIAMS,

Plaintiff,

-against-

UNITED STATES OF AMERICA; FEDERAL BUREAU OF PRISONS; WARDEN HINKLE (Warden of MDC Brooklyn); JOHN DOE BOP DESIGNATION OFFICIALS 1-3; CITY OF NEW YORK; JOHN DOE NYPD DETECTIVES 1-5; JOHN DOE FBI SPECIAL AGENTS 1-5,

Defendants.

Case No. _____

COMPLAINT FOR VIOLATIONS OF CONSTITUTIONAL RIGHTS AND NEGLIGENCE

DEMAND FOR JURY TRIAL

Plaintiff Laquan Williams, appearing pro se and in forma pauperis, brings this civil rights action against Defendants and alleges as follows:

NATURE OF THE ACTION

1.    This is a civil rights action seeking $132,000,000 in compensatory and punitive damages for violations of Plaintiff's constitutional rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), 42 U.S.C. § 1983, and the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(3)-(4) (civil rights), 28 U.S.C. § 1346(b) (Federal Tort Claims Act), and Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

3.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because:

a. Plaintiff's related criminal case is pending in this district;

b. FBI agents involved in the investigation and arrest operate from the FBI New York Field Office at 26 Federal Plaza, New York, NY 10278, within this district;

c. Substantial portions of the investigation and events giving rise to this action occurred in or were directed from this district;

d. All defendants are subject to personal jurisdiction in this district.

PARTIES

4. Plaintiff Laquan Williams is a United States citizen, formerly residing in New York, currently detained at the Metropolitan Detention Center, Brooklyn, New York.

5. Defendant United States of America is sued under the Federal Tort Claims Act for the negligent and wrongful acts of its employees within the Federal Bureau of Prisons.

6. Defendant Federal Bureau of Prisons is a federal agency responsible for the custody and constitutional treatment of federal detainees.

7. Defendant Warden Hinkle is the Warden of MDC Brooklyn, sued in individual and official capacities for violations of Plaintiff's Eighth and Fourteenth Amendment rights.

8. Defendants John Doe BOP Designation Officials 1-3 are BOP officials responsible for Plaintiff's facility designation, sued in their individual capacities. Their identities will be ascertained through discovery.

9. Defendant City of New York is sued under Monell v. Department of Social Services, 436 U.S. 658 (1978), for unconstitutional NYPD policies and customs.

10. Defendants John Doe NYPD Detectives 1-5 are NYPD officers involved in the investigation and Plaintiff's arrest, sued in their individual capacities. Their identities will be ascertained through discovery.

11. Defendants John Doe FBI Special Agents 1-5 are FBI agents involved in the investigation and Plaintiff's arrest, sued in their individual capacities under Bivens. Their identities will be ascertained through discovery.

FACTUAL ALLEGATIONS

A. The December 26, 2023 Shooting and Murder

12. On December 26, 2023, at approximately 11:45 p.m., Plaintiff was seated in a parked vehicle outside a nightclub in Queens, New York.

13. Plaintiff's girlfriend, who was six months pregnant with Plaintiff's child, was in the vehicle with him.

14. Without warning, multiple armed individuals opened fire on the vehicle.

15. Plaintiff was shot multiple times, sustaining gunshot wounds to his torso, arm, and leg.

16. Plaintiff's girlfriend was killed instantly. Her unborn child also perished.

17. Plaintiff was transported to Jamaica Hospital Medical Center where he underwent emergency surgery and remained hospitalized for two weeks.

18. Plaintiff suffered permanent physical injuries including scarring, nerve damage, chronic pain, and limited mobility.

B. The Investigation

19. NYPD and FBI initiated a joint investigation into the shooting and murder.

20. Investigators informed Plaintiff that an inmate incarcerated at the Metropolitan Detention Center (MDC) in Brooklyn, New York, had orchestrated the attack using contraband cellular telephones.

21.   Investigators stated the contraband phones reached the inmate due to inadequate BOP security, lax screening procedures, and staff corruption at MDC Brooklyn.

22.   Over several months, law enforcement repeatedly contacted Plaintiff requesting his cooperation as a witness.

23.   Plaintiff met with investigators on multiple occasions but declined to provide false or unreliable testimony.

24.   Specifically, Plaintiff refused to identify individuals he could not reliably identify or make statements inconsistent with his actual knowledge.

25.   Plaintiff made clear he would cooperate truthfully but would not fabricate testimony.

C. The Retaliatory Arrest - May 23, 2024

26.   On May 23, 2024, approximately five months after Plaintiff declined to cooperate on investigators' terms, Plaintiff was arrested.

27.   The arrest was conducted by the same NYPD detectives and FBI agents who had been investigating the December 2023 shooting.

28.   Plaintiff was arrested on charges completely unrelated to the December 2023 incident.

29.   The timing of the arrest—shortly after Plaintiff's final refusal to provide desired testimony—demonstrates retaliatory motive.

30.   The involvement of the same officers who sought Plaintiff's cooperation further evidences retaliation.

31.   Upon information and belief, Plaintiff's arrest was motivated by retaliatory animus for exercising his constitutional right to refuse to provide false testimony.

32.   Plaintiff appeared in the Southern District of New York and was ordered detained pending trial.

D. Deliberate Placement in Known Danger

33.   Following detention, BOP officials determined where Plaintiff would be housed during pretrial detention.

34.   At the time of designation, BOP officials knew:

a. An MDC Brooklyn inmate had allegedly orchestrated Plaintiff's shooting and his girlfriend's murder;

b. Plaintiff was a victim and potential witness in the investigation;

c. The alleged orchestrator was still housed at MDC Brooklyn;

d. Housing Plaintiff at MDC Brooklyn would expose him to that inmate and his associates;

e. Plaintiff would be perceived as a "cooperator" or "witness," making him a target;

f. This placement created a substantial and obvious risk of serious harm.

35.   Despite this knowledge, BOP officials designated Plaintiff to MDC Brooklyn.

36.   Alternative facilities were available where Plaintiff could have been safely housed.

37.   BOP officials could have placed Plaintiff in protective custody or administrative segregation.

38. The designation decision was made with deliberate indifference to, or actual knowledge of, the substantial risk to Plaintiff's safety.

39. No reasonable BOP official could have failed to perceive the danger of this placement.

E. The Attack at MDC Brooklyn

40. While housed at MDC Brooklyn, Plaintiff was attacked and stabbed multiple times by other inmates.

41. Plaintiff sustained multiple stab wounds to his back, side, and arms.

42. The attack lasted several minutes while correctional staff failed to intervene.

43. Upon information and belief, the attack was carried out by inmates connected to or acting on behalf of the individual who orchestrated the December 2023 shooting.

44. Plaintiff was targeted because of his status as a witness and his perceived cooperation with law enforcement.

45. Plaintiff required emergency medical treatment including numerous stitches and ongoing medical care.

46. Plaintiff's physical injuries from the stabbing include multiple stab wounds, permanent scarring, nerve damage, chronic pain, and limited range of motion.

47. Prior to the attack, Plaintiff informed MDC staff of threats to his safety and requested protection.

48. MDC officials failed to:

- House Plaintiff separately from known threats;
- Provide adequate security supervision;
- Respond to Plaintiff's reports of danger;
- Take any protective measures despite obvious risk.

49. The attack was a direct and foreseeable consequence of BOP officials' deliberate indifference.

F. Ongoing Harm

50. As a direct result of these events, Plaintiff suffers from severe and ongoing injuries:

Physical Injuries:

- Gunshot wounds with permanent scarring and nerve damage
- Stab wounds with permanent scarring
- Chronic pain requiring medication
- Limited mobility and range of motion
- Ongoing medical treatment needs

Psychological Injuries:

- Post-Traumatic Stress Disorder (PTSD) with flashbacks and nightmares
- Major Depressive Disorder
- Severe anxiety and panic attacks
- Chronic insomnia requiring medication

- Hypervigilance and fear for safety
- Survivor's guilt

51. Plaintiff receives ongoing mental health treatment and psychiatric medication.

52. Mental health professionals have diagnosed Plaintiff with PTSD, Major Depressive Disorder, and Generalized Anxiety Disorder.

53. These injuries are permanent and will require lifelong treatment.

54. Plaintiff has suffered the irreplaceable loss of his romantic partner and unborn child.

## FIRST CAUSE OF ACTION
Eighth Amendment - Failure to Protect
(Bivens Against BOP Individual Defendants)

55. Plaintiff incorporates all preceding allegations.

56. The Eighth Amendment prohibits deliberate indifference to a substantial risk of serious harm to an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994).

57. Plaintiff faced an objectively substantial risk of serious harm from being housed at MDC Brooklyn with the individual who orchestrated his attempted murder.

58. BOP Defendants knew of this risk. They knew an MDC inmate had ordered Plaintiff's murder, that Plaintiff was a witness, and that housing Plaintiff at MDC would expose him to this inmate and associates.

59. Despite this knowledge, BOP Defendants:
- Designated Plaintiff to MDC Brooklyn;
- Failed to house him in protective custody;
- Failed to separate him from known threats;
- Ignored his requests for protection.

60. This conduct constitutes deliberate indifference. Farmer, 511 U.S. at 837; Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996).

61. As a direct result, Plaintiff was attacked and stabbed, suffering severe injuries.

62. Plaintiff is entitled to compensatory and punitive damages.

## SECOND CAUSE OF ACTION
Fourteenth Amendment - Pretrial Detainee Rights
(Bivens Against BOP Individual Defendants)

63. Plaintiff incorporates all preceding allegations.

64. As a pretrial detainee, Plaintiff's rights are protected by the Fourteenth Amendment Due Process Clause. Kingsley v. Hendrickson, 576 U.S. 389 (2015).

65. Under Kingsley, the standard is objective reasonableness, not subjective intent.

66. BOP Defendants made intentional decisions about Plaintiff's confinement conditions.

67. Those conditions put Plaintiff at substantial risk of serious harm.

68.   BOP Defendants failed to take reasonable available measures to abate that risk—such as designating Plaintiff to a different facility or housing him in protective custody.

69.   A reasonable official would have appreciated the high degree of risk. Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017).

70.   By not taking protective measures, BOP Defendants caused Plaintiff's injuries.

71.   This conduct was objectively unreasonable and violated the Fourteenth Amendment.

72.   Plaintiff is entitled to compensatory and punitive damages.


THIRD CAUSE OF ACTION

Federal Tort Claims Act – Negligence

(Against United States of America)

73.   Plaintiff incorporates all preceding allegations.

74.   Plaintiff is concurrently filing an administrative tort claim (Standard Form 95) with the Federal Bureau of Prisons as required by 28 U.S.C. § 2675(a).

75.   Plaintiff respectfully requests this Court stay proceedings on this claim pending the BOP's response or the expiration of six months, whichever occurs first.

76.   Under New York law (applicable to FTCA claims), BOP employees owed Plaintiff a duty to provide reasonably safe conditions and protect him from foreseeable harm.

77.   BOP employees breached this duty by:
- Negligently designating Plaintiff to MDC Brooklyn despite knowing the risk;
- Failing to prevent contraband phones that facilitated the original murder plot;
- Failing to provide adequate security and supervision;
- Failing to protect Plaintiff from foreseeable attack.

78.   These breaches were the proximate cause of Plaintiff's injuries.

79.   Plaintiff is entitled to compensatory damages from the United States.


FOURTH CAUSE OF ACTION

First Amendment Retaliation – Retaliatory Arrest

(§ 1983 Against NYPD Defendants; Bivens Against FBI Defendants)

80.   Plaintiff incorporates all preceding allegations.

81.   The First Amendment protects citizens from retaliation for exercising constitutional rights, including the right to refuse to provide false testimony.

82.   Plaintiff engaged in protected activity by declining to provide false or unreliable testimony.

83.   Defendants took adverse action by arresting Plaintiff on unrelated charges.

84.   There is a causal connection between the protected activity and the arrest:
- Temporal proximity (five months);
- Same officers who sought cooperation conducted the arrest;
- Sequence of events: refusal → arrest.

85. Upon information and belief, the arrest lacked probable cause or was pretextual.

86. Alternatively, objective evidence shows Plaintiff would not have been arrested "but for" retaliatory motive. Nieves v. Bartlett, 139 S. Ct. 1715, 1727 (2019).

87. This retaliatory conduct violated Plaintiff's First Amendment rights. Hartman v. Moore, 547 U.S. 250 (2006).

88. Plaintiff is entitled to compensatory and punitive damages.

FIFTH CAUSE OF ACTION

Fourth Amendment – False Arrest

(§ 1983 Against NYPD Defendants; Bivens Against FBI Defendants)

89. Plaintiff incorporates all preceding allegations.

90. The Fourth Amendment protects against arrest without probable cause. Dunaway v. New York, 442 U.S. 200 (1979).

91. Defendants arrested Plaintiff on May 23, 2024.

92. Upon information and belief, the arrest lacked probable cause.

93. An arrest without probable cause violates the Fourth Amendment. Jaegly v. Couch, 439 F.3d 149 (2d Cir. 2006).

94. Plaintiff is entitled to compensatory and punitive damages.

SIXTH CAUSE OF ACTION

Monell Liability – Municipal Policy/Custom

(§ 1983 Against City of New York)

95. Plaintiff incorporates all preceding allegations.

96. The City of New York is liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), because Plaintiff's injuries were caused by:

a. A municipal custom or practice of retaliating against uncooperative witnesses; and/or

b. Failure to train NYPD officers regarding constitutional limitations on arrests, amounting to deliberate indifference. City of Canton v. Harris, 489 U.S. 378 (1989).

97. The City is liable for compensatory damages.

DAMAGES

98. As a direct result of Defendants' unlawful conduct, Plaintiff seeks compensatory damages totaling $132,000,000:

Economic Damages:

- Past medical expenses: $500,000
- Future medical expenses: $2,500,000
- Lost earning capacity: $5,000,000

Non-Economic Damages:

- Physical pain and suffering: $30,000,000
- Mental and emotional anguish (PTSD, depression, anxiety): $35,000,000
- Loss of companionship (girlfriend): $20,000,000
- Loss of unborn child: $15,000,000
- Permanent scarring and disfigurement: $10,000,000
- Loss of liberty (false arrest/detention): $5,000,000
- Loss of security and peace of mind: $9,000,000

99.  Plaintiff also seeks punitive damages against individual Defendants to punish malicious conduct and deter future violations. Smith v. Wade, 461 U.S. 30 (1983).

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

A. Permission to proceed in forma pauperis pursuant to 28 U.S.C. § 1915;

B. Appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1);

C. Judgment in favor of Plaintiff;

D. Compensatory damages of $132,000,000;

E. Punitive damages against individual Defendants;

F. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

G. Such other relief as the Court deems just.

JURY DEMAND

Plaintiff demands a trial by jury on all claims.

Dated: _____, 2025
Respectfully submitted,

LAQUAN WILLIAMS, Pro Se
Hudson County Correctional Facility
Reg. No.: 372469
30-35 Hackensack Ave
Kearny NJ 07032





HUDSON COUNTY CORRECTIONAL FACILITY
(929) 665-0623
LAQUAN WILLIAMS
30-35 HACKENSACK AVE
KEARNY  NJ 07032

1 LBS
SHP WT: 1 LBS
DATE: 25 MAR 2026

1 OF 1

SHIP TO:
ROOM 250
PRO SE INTAKE UNIT
500 PEARL ST

NEW YORK  NY 10007-1316

NY 102 9-10

UPS GROUND

TRACKING #:  1Z R09 Y14 42 4568 1631

BILLING: P/P
SIGNATURE REQUIRED

MMC5ECKUPBZ31 ISH 13.00C ZZP 450 11.5V 03/2026

SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.

RRD 0226

Laquan Williams

Hudson County

Correctional Facility

30-35 Hackensack Ave

Kearny, NY. 07032

RECEIVED
SDNY PRO SE OFFICE

2026 MAR 26 PM 3: 40



MUN-3290
P: PURPLE S: FRNT
1:031

PRO SE INTAKE UNIT
500 PEARL ST
NEW YORK NY 10007